RUSSELL BRUSIE, Respondent, *v.* PECK BROTHERS & COM-
PANY, Appellants.

*Court of Appeals, October 11, 1892.*

1. *Evidence.  Patents.*—Where the complaint in an action demands an in-
junction, annulment of a contract for manufacturing and selling a
patented machine, damages and an account of sales, but the plaintiff
proceeded on the trial as for a recovery of royalties upon similar
machines which defendants had made and sold, a refusal to receive in
evidence the letters patent on defendants' offer is error.  They are
receivable in evidence to aid in the construction of plaintiff's claim.
2. *Same.*—While the plaintiff is resting upon his contract and claiming a
liability in the defendants to make payments by force of its terms, it is
competent for the latter to show that such contract had been mutually
rescinded.

Appeal from judgment of the supreme court, general term,
second department, affirming judgment entered upon the
verdict of a jury and order denying motion for new trial on
the minutes.

*Robert Sewell,* for appellants.

*D. J. Dean,* for respondent.

PER CURIAM.—The plaintiff was the owner of letters
patent of the United States, securing to him the exclusive
right to make, use and sell a lawn sprinkler, and by an agree-
ment in writing with him the defendants acquired the sole
right to manufacture and sell the patented machine.  The
contract called for the performance of certain acts on defend-
ants' part and the payment of a certain royalty.  In the fol-
40

lowing year disputes occurred between the parties, and this action followed.

The complaint set up the making of the contract and alleged a violation by defendants of their contractual obligations, in certain respects stated, and the fraudulent practice of competing with and underselling the plaintiff upon the market by a machine resembling the plaintiff's, but inferior and of less value. The relief prayed for was an injunction, the annulment of the contract, damages and an account of sales. The answer admitted the contract; denied performance by plaintiff; averred a faithful compliance on the defendant's part; denied the alleged breaches and fraudulent practices; set up the difficulty of selling plaintiff's machines by reason of the excessive price fixed for their sale, and alleged that to supply the demand at a less price they did make and sell a sprinkler of their own, which did not infringe upon the plaintiff's.

When the parties came to trial, a number· of years after the issues were joined, the plaintiff, after putting in the contract and endeavoring to prove, by the evidence of one of the defendants and of two expert witnesses, that certain machines made by the defendants were actually the same in operation and result as the plaintiff's, rested; the concession being made as to the amount of royalties due, if any were due. The defendants on their side offered the plaintiff's letters patent in evidence; but were not permitted. The rest of their case consisted in evidence tending to show a mutual abandonment of the contract in the year following its making, and in the evidence of witnesses to show characteristic differences in the two machines; sundry attempts to prove that the principle of plaintiff's machine was long previously known, or what the plaintiff's patent covered, having failed under the judge's rulings. The plaintiff, in rebuttal, endeavored to prove the differences in the machines. The trial judge submitted to the jury this one question: "Do each of the three lawn sprinklers, exhibits B, C and

D, substantially embody the same device or idea and accomplish practically the same results by means of the same mechanical principles?"

The looseness with which this action was tried out and the disregard by the parties of the particular issues tendered by the pleadings would dispose us to let the judgment stand as a final settlement between these litigants, if it were possible. But two errors, which are pointed out by the appellants, were sufficiently grave to require us to order a new trial.

The plaintiff, abandoning the grounds set out in his complaint, proceeded as for a recovery of royalties upon the lawn sprinklers which the defendants had made and sold. When the defendants offered in evidence the letters patent issued to the plaintiff they should have been received. Their exclusion presents the first of the two serious errors committed in the trial. The plaintiff's objection was upon the ground of their immateriality; but they were very material in aid of a proper understanding as to what the patent covered and the contract called for. If the defendants were liable for royalties, it was because they were manufacturing and selling the particular machine which was invented and owned by the plaintiff and as to which the contract spoke, into which they had entered. The letters patent were receivable in evidence to aid in the construction of the claim which was set up against the defendant. Upon no conceivable ground could they be properly excluded, upon the issue tried, and it is not easy to perceive how their introduction could prejudice any legal right of the plaintiff.

The very question presented to the jury, if we should concede its propriety in such an action, would require the presence in the evidence of the patent record and its construction by the court, for the understanding by the jury of the rights and obligations of the parties under the contract.

The appellants excepted to that part of the charge which instructed the jury that they were not to consider the

question of the rescinding of the contract. The trial judge assigned as a reason that there was no evidence upon that point. He also refused to charge that if the parties mutually agreed to rescind the contract in April, 1874, that nothing can be recovered except royalties on the Brusie machine up to that date. In these rulings the trial judge greatly erred. It is true the answer did not plead rescission as a defense; but in the way the cause was tried and the precise issues mutually disregarded, we must hold that upon the issue as tried the defendants were entitled to have the jury pass upon the question of whether there had, or had not, been a mutual agreement to rescind, upon the evidence of the acts and conduct of the parties. This evidence consisted in a letter written by plaintiff in April, 1874, a few months after the contract, in which, upon the ground therein stated of a failure by the defendants to perform the terms of the contract, the plaintiff said he considered that they " have forfeited their right under it;" that he shall no longer " consider himself bound by it," and " shall hold them responsible for any damage that may occur to him by the further manufacture or sale of the lawn sprinkler by them." No answer was made to this, apparently; but the patterns were, a few days thereafter, returned to plaintiff upon his insistance, and the defendants' treasurer testified that they " ceased manufacturing the machines known as the Brusie machines after receiving his notice;" and, again, that "it was not till we received written notice that we ceased manufacturing." If the jury believed, upon this evidence, that the defendants had ceased to continue under the contract, and that there had been a mutual rescission of the contract, the right of recovery under this action would have been limited to that time. For any violation of the plaintiff's patent rights, such as could be claimed after the contract had ceased to exist, the plaintiff's remedy was by another action and in another forum. While the plaintiff was resting upon his contract and claiming a liability in

the defendants to make payments by force of its terms, it certainly was competent for the defendants to show that the contract had been mutually rescinded. Indeed, the plaintiff's counsel seems to have thought so; for he made no objection to the evidence offered on that point.

For the errors mentioned, the judgments below should be reversed, and a new trial ordered, with costs to abide the event.

All concur.